**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KIMBERLY NEILSON,

    Plaintiff,

        v.

BOARD OF EDUCATION OF HUNTLEY
COMMUNITY SCHOOL DISTRICT 158 and
ROSHAUNDA HENSON,

    Defendants.

No. 1:23-CV-00358

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

After Kimberly Neilson's contract as a school social worker was not renewed, she sued the Board of Education and Roshaunda Henson, the school principal, alleging that she was fired in retaliation for her First Amendment-protected speech and for reporting child endangerment in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* R. 94, Pl.'s Resp. to DSOF ¶ 10; R. 1, Compl. ¶ 1.[1] The Defendants move for summary judgment. R. 89, Defs.' Mot. Because no reasonable jury could find that Neilson's speech was a motivating factor for her termination, summary judgment is granted on her First Amendment retaliation claim. Without the federal law claim, the Court relinquishes supplemental jurisdiction over the state law claim.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the First Amendment claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the whistleblower claim under 28 U.S.C. § 1367(a).

## I. Background

In deciding the Defendants' motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and here that is Neilson.

Neilson worked as a social worker at Chesak Elementary School in Lake in the Hills, Illinois. Pl.'s Resp. to DSOF ¶ 1; R. 91, Defs.' Exh. A, Neilson Dep. at 28:7–13.[2] In June and July 2021, Neilson publicly raised objections to school COVID mitigation policies, including mask mandates, at a school board meeting (for a different school district that Neilson's children attend) and in an online article. Pl.'s Resp. to DSOF ¶¶ 11–12; Neilson Dep. at 48:8–20, 50:12–18; R. 91-6, Defs.' Exh. E, Pl.'s Resp. to Interrog. No. 5. In August, two parents of Chesak students emailed school administrators to express concerns about Neilson. Pl.'s Resp. to DSOF ¶ 13; R. 91-7, Defs.' Exh. F-1, First Parent COVID Email; R. 91-7, Defs.' Exh. F-3, Second Parent COVID Email. One of the parents emailed Superintendent Scott Rowe, who forwarded the email to Henson and said "FYI - she works at Chesak." Pl.'s Resp. to DSOF ¶ 13; Second Parent COVID Email. Henson responded, "Thanks. I got another one this morning as well from another parent. I think she cc [sic] the Superintendents Email.

---

[2]Neilson objects to the consideration of most of the Defendants' exhibits, which were filed late. R. 94, Pl.'s Resp. Br. at 2–3. But the Defendants experienced technical issues that prevented them from uploading their exhibits. R. 92, Def.'s Mot. to File Exhs. And they were only one day late: the summary-judgment motion was due on Friday, March 7, 2025; the Defendants filed the exhibits on Saturday, March 8; and they filed a motion for leave to file the exhibits on Monday, March 10. *See* R. 88, 2/3/25 Order; R. 91, Defs.' Exhibits; Mot. to File Exhs. Because the delay was so short, the Court would have granted the Defendants an extension anyway. Indeed, the Court already granted their motion for leave to file the exhibits. R. 93, 3/13/25 Order. So the Court considers all of the defense evidence.

I'm on it." Pl.'s Resp. to DSOF ¶ 14; Second Parent COVID Email. That day, Henson emailed Neilson to discuss the parents' concerns. Pl.'s Resp. to DSOF ¶ 15; R. 91-7, Defs.' Exh. F-2, Henson COVID Email.

On August 18, 2021, Neilson met with Henson and Jackie Allen (the school district's Director of Elementary Special Services). Pl.'s Resp. to DSOF ¶ 19; Neilson Dep. at 51:10–18. Neilson confirmed that she would follow the district's masking rules at work. Pl.'s Resp. to DSOF ¶ 19; Neilson Dep. at 51:12–52:6. Henson and Allen did not discipline Neilson, nor express any personal feelings about Neilson's views. Pl.'s Resp. to DSOF ¶¶ 20–21; Neilson Dep. at 52:20–53:11.

At the beginning of the school year, Henson assigned Neilson to be the "number one responder" to student crises at Chesak. Pl.'s Resp. to DSOF ¶ 23; Neilson 58:7–16. It is regular practice in the district for social workers to be first responders for crisis calls. Pl.'s Resp. to DSOF ¶ 25; R. 91-7, Defs.' Exh. F, Henson Decl. ¶ 19. Neilson's evaluator was also changed from another school administrator to Henson in September 2021. Pl.'s Resp. to DSOF ¶¶ 28–29, 32; R. 91-7, Defs.' Exh. F-5, Reassignment Email.

After beginning to evaluate Neilson, Henson had several concerns about her job performance. Pl.'s Resp. to DSOF ¶ 34; Henson Decl. ¶¶ 26–40. For instance, Neilson was slow to respond to teachers who requested her support, failed to draft appropriate evaluations for students' individualized education programs, and did not keep her calendar updated. Pl.'s Resp. to DSOF ¶ 34; Henson Decl. ¶¶ 30–40; R. 91-7, Defs.' Exh. F-7, Delayed Email Resp.; R. 91-7, Defs.' Exh. F-10, Henson Delay

3

Email; R. 91-7, Defs.' Exh. F-11, IEP Email. Henson shared these concerns with Neilson in December 2021. Pl.'s Resp. to DSOF ¶¶ 35–36; Henson Decl. ¶ 44.

That month, a parent also reached out to Superintendent Rowe with concerns that Neilson had misrepresented herself as a licensed social worker (commonly known as an LSW). Pl.'s Resp. to DSOF ¶ 41; R. 91-8, Defs.' Exh. G-4, Parent LSW Email. Rowe asked Adam Zehr, the Acting Assistant Superintendent for Human Resources, to verify Neilson's credentials. Pl.'s Resp. to DSOF ¶¶ 8, 41; Parent LSW Email; R. 91-8, Defs.' Exh. G, Zehr Decl. ¶¶ 1–2, 13. Zehr looked at the Illinois Department of Financial and Professional Regulation's website, but could not find proof that Neilson was an LSW (or was one when she was hired a few years prior). Pl.'s Resp. to DSOF ¶ 42; Zehr Decl. ¶ 14. So Zehr and a human resources employee asked Neilson to provide proof of her LSW license. Pl.'s Resp. to DSOF ¶¶ 43–44; R. 91-8, Defs.' Exh. G-5, HR LSW Email; R. 91-8, Defs.' Exh. G-6, Dec. Zehr LSW Email. Neilson responded that her license had expired in May 2020 and she would renew it. Pl.'s Resp. to DSOF ¶ 45; R. 91-8, Defs.' Exh. G-7, Dec. Neilson LSW Email. But by the end of January, Neilson had failed to provide any proof that she was an LSW. Pl.'s Resp. to DSOF ¶¶ 46, 48; R. 91-8, Defs.' Exh. G-8, Jan. Zehr LSW Email; R. 91-8, Defs.' Exh. G-9, Feb. Neilson LSW Email.

In January 2022, a Chesak student had behavioral issues that escalated to physical contact with other students. Pl.'s Resp. to DSOF ¶¶ 49, 52; R. 91-5, Defs.' Exh. D, Henson Resp. to Interrog. Nos. 12–13; Henson Decl. ¶ 56. Neilson filed a police report, alleging that Henson's failure to properly address the student's behavior

constituted child endangerment to the other students. Pl.'s Resp. to DSOF ¶ 53; Pl.'s Resp. to Interrog. No. 4. Neilson later filed another police report and several reports with the Illinois Department of Children and Family Services. Pl.'s Resp. to DSOF ¶¶ 61, 65; Pl.'s Resp. to Interrog. Nos. 3–4.

On January 27, 2022, Henson met with Neilson and told her that she would not recommend renewing her contract to the Board of Education. Pl.'s Resp. to DSOF ¶ 66; Henson Decl. ¶ 81. The Board voted not to renew Neilson's contract in March. Pl.'s Resp. to DSOF ¶ 70; R. 89, Defs.' Mot. Exh. 2, Bd. Notice.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be

---

[3]In her brief, Neilson cites *Anderson v. Crossroads Capital Partners, LLC*, 578 F.3d 849, 856 (7th Cir. 2009). Pl.'s Resp. Br. at 2. Perhaps Neilson meant to cite *Anderson v. Liberty Lobby*. 477 U.S. 242. But the case she cites does not appear to exist, or at least Neilson provides an incorrect citation.

admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, then the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Motion to Supplement

The Court must first address Neilson's motion to file supplemental materials. R. 101, Pl.'s Mot. Neilson failed to authenticate any of the documents attached to her summary judgment brief. *See* R. 94, Pl.'s Exhs. So those documents are inadmissible, and the Court cannot consider them at summary judgment. Fed. R. Evid. 901; Fed. R. Civ. P. 56(e); *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003). The Defendants noted the lack of authentication in their May 2025 reply brief. R. 95, Defs.' Reply Br. at 7.[4] But Neilson did not seek leave to file a declaration verifying the authenticity of the documents until September 2025. *See* Pl.'s Mot.; R. 101-1, Pl.'s Exh. 1, Neilson

---

[4]The Defendants also note a variety of other procedural and formatting defects in Neilson's brief and statement of facts. Defs.' Reply Br. at 1–3. But because pro se submissions must be construed leniently, the Court considers Neilson's brief and statement of facts, and views the admissible evidence in the light most favorable to her. *See Gray v. Hardy*, 826 F.3d 1000, 1004–05 (7th Cir. 2016).

6

Decl. Neilson thus effectively seeks a four-month extension to properly submit her summary-judgment evidence.

Under Civil Rule 6, the Court may give a party an extension after the deadline has passed only "for good cause … if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Neilson offers no reason why she waited four months to seek leave to file her authentication declaration. *See generally* Pl.'s Mot.; R. 105, Pl.'s Reply Br. So there is no "excusable neglect." *See Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). The Court understands that Neilson, litigating pro se, was perhaps unaware of the authentication requirement in the Federal Rules of Evidence. If she had moved for leave to file her authentication materials soon after Defendants flagged the issue, then the Court would have permitted her to do so. But because Neilson waited four months for no apparent reason, her motion is denied.

The Court hastens to add, as it will describe throughout the Opinion, that this denial does not ultimately prejudice Neilson. Even if the Court had considered the evidence Neilson seeks to authenticate, it would still find that there is no genuine dispute of facts and grant the summary judgment motion.

## B. First Amendment Retaliation

To prove a First Amendment retaliation claim, a plaintiff must demonstrate that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the employer's actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) (cleaned

up).[5] The Defendants contest only the third element. R. 89, Defs.' Br. at 8. "[A]t summary judgment, the burden of proof is split between the parties." *Kidwell*, 679 F.3d at 965. "Initially, to establish a prima facie case of retaliation, the plaintiff must produce evidence that his speech was at least a motivating factor … of the employer's decision to take retaliatory action against him." *Id.* "Then, the burden shifts to the employer to rebut the causal inference raised by the plaintiff's evidence" by articulating a legitimate, non-retaliatory reason for the action. *Id.* "If the employer does so, the analysis moves to the third step, in which the employee tries to show that the employer's stated reason is false, and falsity permits a reasonable inference that the real reason was unlawful." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 641–42 (7th Cir. 2013).

### 1. Prima Facie Case

To establish a prima facie case of retaliation, Neilson can produce direct or circumstantial evidence of retaliatory motive. *Kidwell*, 679 F.3d at 965. The parties agree that there is no direct evidence. Defs.' Br. at 9; Pl.'s Resp. Br. at 10–11. Neilson identifies four pieces of circumstantial evidence that she believes raise a genuine dispute about Defendants' motive: (1) the timing of events, (2) Henson's email statement—"I'm on it"—to Superintendent Rowe, (3) the tone of the August 18th meeting, and (4) similarly situated employees who were treated differently than Neilson. Pl.'s

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Resp. Br. at 5–6, 11. But even when the evidence is viewed in Neilson's favor, she raises no genuine dispute of fact that would allow a reasonable jury to find that Neilson's speech was a motivating factor in Defendants' decision not to renew her contract.

### a. Timing

Neilson contends that the temporal proximity between her protected speech and her firing can raise an inference of retaliation. Pl.'s Resp. Br. at 11. "Circumstantial evidence may include suspicious timing," but "suspicious timing will rarely be sufficient in and of itself to create a triable issue." *Kidwell*, 679 F.3d at 966 (cleaned up). And for suspicious timing to raise an inference of causation, courts "typically allow no more than a few days to elapse between the protected activity and the adverse action." *Id.*

Here, Henson became aware of Neilson's speech in August 2021 when Henson received two emails from parents. Pl.'s Resp. to DSOF ¶ 13; First Parent COVID Email; Second Parent COVID Email. Henson decided not to recommend renewal of Neilson's contract in January 2022, and the Board officially voted in March 2022. Pl.'s Resp. to DSOF ¶¶ 66, 70; Henson Decl. ¶ 81; Bd. Notice. So five months passed before Henson decided to fire Neilson, and seven months passed before the Board did so. "[T]hese extended time gaps alone militate against allowing an inference of causation based on suspicious timing." *Kidwell*, 679 F.3d at 967; *see also Horwitz v. Bd. of Ed. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 613 (7th Cir. 2001).

Neilson argues that there is closer temporal proximity than the timing of her firing would suggest because the Defendants also took a series of retaliatory actions against her in the fall. Pl.'s Resp. Br. at 1, 8–11. For example, she says the reassignment of her evaluator to Henson in September 2021 was retaliatory. *Id.* at 9. But she produces no evidence to suggest that assigning an employee a different evaluator "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (cleaned up). Indeed, Neilson admits that her evaluator had also changed in prior years, Pl.'s Resp. to DSOF ¶ 33; Neilson Dep. at 75:14–19, which suggests that it is a routine action that would not deter employees' speech.[6] The same goes for Henson's request that Neilson be the first responder to crisis calls. Because this is a regular responsibility for social workers in the school district, this is not a retaliatory action that would deter an ordinary employee from engaging in protected activity. Pl.'s Resp. to DSOF ¶¶ 23, 25; Neilson 58:7–16; Henson Decl. ¶ 19. In any event, even if these events were retaliatory, they still occurred weeks after Henson became aware of Neilson's protected speech, and thus do not raise an inference of causation. *See Kidwell*, 679 F.3d at 967.

---

[6]Neilson objects that her evaluator had never been changed after the school year already started. Pl.'s Resp. to DSOF ¶ 33. But she offers no admissible evidence to support this fact. And she does not explain why a change in evaluator a few weeks into the school year would transform an otherwise ordinary reassignment to a deprivation likely to deter speech.

**b. "I'm on it" Email**

Neilson next points to Henson's response to Superintendent Rowe's email: "I'm on it." Pl.'s Resp. Br. at 4–6, 11. Neilson contends that a jury could reasonably interpret this phrase to mean that Henson would take retaliatory action to punish Neilson for her speech. *Id.* at 4–6. But Henson says that she merely meant to convey that she had already reached out to Neilson to discuss the parents' concerns. R. 89, DSOF ¶ 15; Henson Decl. ¶ 10. And the Defendants present undisputed evidence that, not surprisingly, Henson emailed Neilson that same day to discuss the parents' concerns. Pl.'s Resp. to DSOF ¶ 15; Henson COVID Email.

Neilson disagrees with Henson's explanation of the email, Pl.'s Resp. to DSOF ¶ 15, but offers no reason why a reasonable jury would conclude that "I'm on it" suggests retaliatory intent. Neilson says that there was no action for Henson to take because she had not violated school policy. Pl.'s Resp. Br. at 4. But the August 18 conversation confirms that Henson wished to discuss the parents' concerns with Neilson and ensure that she would comply with the district's masking policy. *See* Pl.'s Resp. to DSOF ¶ 19; Neilson Dep. at 51:12–52:6. Neilson takes issue with the fact that Henson contacted her work email, which Neilson does not check during the summer. Pl.'s Resp. Br. at 5. But the fact that Neilson was unlikely to see Henson's email does not disprove that Henson sent it, nor that Henson was referring to that email when she said, "I'm on it." Neilson also argues that if Henson meant to convey that she had already taken action, she would have expressly said so. Pl.'s Resp. to DSOF ¶ 15. But Henson was not required to spell out her meaning in a short email. Thus,

11

Neilson fails to raise any genuine dispute that could lead a reasonable jury to infer retaliatory motive from Henson's email.

### c. August 18 Meeting

At the August 18 meeting to discuss the parents' concerns about her speech, Neilson contends that "Henson and Allen were indirectly threatening and attempting to intimidate [her] to make sure [she] didn't speak out further in the future." Pl.'s Resp. Br. at 6. But Neilson asserts this argument in her *brief* and provides no admissible evidence to support this account of the meeting. Indeed, in her deposition, Neilson agreed that Henson and Allen did not "indicate any personal feelings" about her views and did not punish her. Pl.'s Resp. to DSOF ¶¶ 20–21; Neilson Dep. at 52:20–53:13. Henson and Allen did tell Neilson that one of the parents wanted her fired for her statements. Pl.'s Resp. to DSOF ¶¶ 21–22; Neilson Dep. at 52:7–16. But the undisputed evidence also shows that Henson and Allen affirmed that Neilson would continue to work as a social worker at the school. Pl.'s Resp. to DSOF ¶ 22; Neilson Dep. at 52:22–53:1. Thus, Neilson fails to present any evidence to raise a genuine dispute about whether Henson and Allen's tone or statements at the August 18 meeting suggest retaliatory motive.

### d. Similarly Situated Employees

Finally, Neilson vaguely asserts that similarly situated employees who did not engage in protected speech were not subject to the same evaluation standards or retaliatory actions that she experienced. Pl.'s Resp. Br. at 11. But Neilson does not identify those employees, let alone present evidence to allow a reasonable jury

conclude that they were similarly situated to her. So this assertion—unsupported by admissible, specific evidence—cannot raise a genuine dispute about whether Defendants had a retaliatory motive.

Ultimately, Neilson fails to overcome the summary judgment motion because she does not identify any evidence to make a prima facie case of retaliation. This failure is dispositive, *Hobgood*, 731 F.3d at 642, but the Court next considers the Defendants' proffered reasons for firing Neilson for the sake of thoroughness.

### 2. Legitimate, Non-Retaliatory Motive

If an employee establishes a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Hobgood*, 731 F.3d at 641. The employee may then rebut that reason by showing it is merely pretext for retaliation. *Id.* at 641–42. Here, the Defendants articulate a variety of reasons for firing Neilson, and she fails to raise any genuine dispute that they are pretextual.

First, Henson identified several problems with Neilson's job performance. Pl.'s Resp. to DSOF ¶ 34; Henson Decl. ¶¶ 26–40; Delayed Email Resp.; Henson Delay Email; IEP Email. Neilson argues that she has a record of success as a social worker, which makes it implausible that she would suddenly receive a negative evaluation from Henson. Pl.'s Resp. Br. at 11. But because Neilson did not authenticate any of the documents capturing her prior evaluations, she produces no admissible evidence to demonstrate a record of success. And even if Neilson produced admissible evaluations from prior years, that evidence would not genuinely dispute that Henson

13

evaluated her negatively during the relevant school year. Work performance can change; the fact that Neilson performed well in the past does not disprove that she performed poorly during her last year at Chesak.

Neilson more broadly contends that "she was performing her duties adequately," but "such evidence generally is insufficient to raise a question of fact about an employer's honest assessment of inadequate performance." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460 (7th Cir. 1994). "[A] plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies." *Id.* But Neilson does not refute any of the specific facts underlying Henson's performance evaluation. For instance, Neilson argues that there were "circumstances that reveal[] there was no issue" with her delayed responses to teachers who requested her help. Pl.'s Resp. to DSOF ¶ 34. She does not explain those circumstances. And even if she did explain the reason behind her delayed response times, it would not disprove the fact that she was, in fact, slow to respond. *See, e.g.*, Delayed Email Resp. Neilson thus does not genuinely dispute that the Defendants had honest concerns about her job performance, which is a legitimate and non-retaliatory reason not to renew her contract.

Second, when Henson decided not to renew Neilson's contract on January 27, 2022, she also knew that Neilson had failed to provide proof she was an LSW. Pl.'s Resp. to DSOF ¶ 47; Jan. Zehr LSW Email. Neilson does not genuinely dispute this fact, either. She notes that she later provided evidence that she was an LSW. Pl.'s Resp. to DSOF ¶ 46. But again, because Neilson failed to properly authenticate the

14

documents she relies on, she cannot prove this fact. Even assuming she was an LSW and eventually provided proof of her license to the school district, Neilson still did not provide this proof by December 15, 2021, the initial deadline set by the district. Pl.'s Resp. to DSOF ¶ 47; Dec. Zehr LSW Email; Jan. Zehr LSW Email; Feb. Neilson LSW Email. Thus, Neilson does not refute the fact that she took *months* to adequately respond to Zehr's inquiries about her license. And at the time that Henson recommended Neilson's termination, Neilson had not provided evidence of her LSW credentials. Pl.'s Resp. to DSOF ¶¶ 47, 67; Jan. Zehr LSW Email; Feb. Neilson LSW Email. Neilson thus fails to rebut this legitimate reason for the non-renewal of her contract, too.

Because Neilson fails to provide any evidence that would allow a reasonable jury to find that the Defendants' reasons for firing her were pretextual, the summary judgment motion must be granted.[7] *See Kidwell*, 679 F.3d at 971.

## C. Illinois Whistleblower Act

Because the Court grants summary judgment to the Defendants on Neilson's First Amendment retaliation claim, the Court relinquishes jurisdiction over her state law claim. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (explaining that "[w]hen federal claims drop out of the case," the trial court has "broad discretion to decide whether to ... relinquish

---

[7]Neilson brings a *Monell* claim against the Board of Education for First Amendment retaliation. Compl. ¶¶ 38–41. Because she fails to survive summary judgment on the individual retaliation claim against Henson, "there can be no viable *Monell* claim" against the Board. *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1062 (7th Cir. 2018).

15

supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment"). The state whistleblower claim is dismissed without prejudice to refiling in state court.

## IV. Conclusion

The Defendants' motion for summary judgment on the First Amendment claim, R. 89, is granted. Supplemental jurisdiction over the state law claim is relinquished.

ENTERED:


    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2026

16